**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **CHAPTER 7** |
| **ROGER N. WELLS** | ) | |
| | ) | |
| Debtor. | ) | **CASE NO.  04-75100** |

———————————————————————————————————

| | | |
|---|---|---|
| **CHARLIE R. JESSEE, Trustee** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **Adversary Proceeding No. 06-07094** |
| **ROY WELLS, JR.** | ) | |
| and | ) | |
| **ROGER N. WELLS** | ) | |
| | ) | |
| Defendants. | ) | |

———————————————————————————————————

<u>**MEMORANDUM OPINION**</u>

Before the Court is the Trustee's Complaint "(1) For Injunctive and Declaratory Relief and (2) For Authority to Sell Property of A Co-owner Free and Clear of All Liens, Claims, Rights and Interests Pursuant to 11 U.S.C. § 363(b), (f) and (h)" against Roger N. Wells and Roy Wells, Jr.  This matter came to be heard on June 6, 2007.  At that time evidence was taken and the parties requested that they be allowed to submit written arguments.  Their request was granted and the matter was taken under advisement.  The matter has been briefed and is now ready for decision.  For the reasons stated below, the Court will enter judgment in favor of the co-defendant, Roy Wells, Jr.

1

**ALLEGATIONS AND EVIDENCE PRESENTED AT TRIAL**

Roger Wells, the Debtor, filed a voluntary Chapter 11 petition on December 27, 2004.  The Debtor's case was converted to one under Chapter 7 on December 8, 2005.  The subject adversary proceeding was commenced by the Trustee on August 10, 2006 against the Debtor and Roy Wells, Jr., the Debtor's father.  Roy Wells, Jr. will sometimes be referred to in this opinion as "Mr. Wells", "Roy", or "the father" and the Debtor as "Roger" or "the son".

In Count I of the Complaint, the Trustee alleges that at the commencement of his case the Debtor owned one-half the shares of and was an officer and director of an entity known as Well-Tec Corporation (hereafter referred to as "Well-Tec").  It alleges that the Debtor's interest in Well-Tec is property of the estate.  The Complaint alleges that Roy Wells, Jr. owned the other half of the shares and was also an officer and director of Well-Tec.

The Complaint alleges that Well-Tec is the fee simple owner of approximately 10.5 acres of real property located in the Hurricane area of Wise County, Virginia (hereafter referred to as "the Property").  Per the Complaint, the Property is adjacent to a 2.2 acre parcel that is owned by the Debtor and Roy Wells, Jr., which the Court has previously authorized the Trustee to sell at public auction.[1]  In addition to being located adjacent to the 2.2 acre parcel, the Complaint alleges that the Property contains the septic system for the 2.2 acre parcel.

---

[1]  The Court notes that on May 10, 2006, prior to the filing of the subject adversary proceeding, the Court heard the Trustee's "Motion for an Order Granting (1) Authority to sell property of the estate at public auction free and clear of all liens, claims, rights and interests pursuant to 11 U.S.C. § 362(b) and (f), (2) Approval of the Compensation of the Trustee's Auctioneer, and (3) Reduction of the time required for notice of a sale".  On May 12, 2006, the Court by order granted the Trustee's motion and authorized the Trustee to sell the approximately 2.216 acre parcel which was the subject of that motion.

Count I further alleges that Well-Tec's corporate existence was automatically terminated by the Virginia State Corporation Commission on September 1, 1996. By operation of law, all of Well-Tec's property and affairs transferred to the Debtor and Roy Wells, Jr. as trustees in liquidation pursuant to § 13.1-752(A) of the Virginia Code. As trustees in liquidation, Roy and Roger Wells had a statutory duty to wind up Well-Tec's affairs and distribute the assets among its shareholders in accordance with their respective rights. The Complaint alleges that the Defendants have failed to fulfill their duty as trustees in liquidation because Well-Tec's assets have not been distributed to its shareholders. The Complaint further alleges that the estate has an interest in Well-Tec's assets because the Debtor is a shareholder and as such the trustees in liquidation have a duty to turn over the portion of the assets in which the estate has an interest. The Complaint also alleges that cause exists to order the Defendants to fulfill their duties as trustees in liquidation by conveying the Property to the estate and Mr. Wells in equal shares or, in the alternative, ordering them to turn over the portion of the Property in which the estate has an interest.

In Count II of the Complaint, the Trustee alleges that upon conveyance of the Property to Roger and Roy Wells the Property will be subject to a statutory tax lien in favor of Wise County which is believed to amount to $0. The Complaint further alleges that the market value of the Property is unknown, but it is known that the Property is invaluable to the purchaser of the adjacent 2.2 acre parcel because the Property contains the septic system for the 2.2 acre parcel. Upon conveyance of the Property to the Defendants, the Trustee will seek authority to sell all interests in the Property at public auction, for which good cause is alleged to exist.

On September 13, 2006, Roy Wells, Jr. filed an Answer to the Complaint.  In his Answer, he denied most of the Trustee's allegations due to lack of knowledge.  The Answer, however, expressly denied that the Debtor owned one-half of the shares of Well-Tec and affirmatively stated that Roy owns 100% of the shares of Well-Tec.  On November 9, 2006, the Trustee filed a Motion for Default Judgment with respect to the Debtor on the ground that the Debtor failed to file a responsive pleading.  On November 22, 2006, the Court entered an order granting default judgment against the Debtor, who did not appear at the hearing on this matter on November 21, 2006.

A trial was held in this adversary proceeding on June 6, 2007.  The only witness at the trial, Mr. (Roy) Wells, was offered by counsel for the Trustee.  On direct examination, he testified that he incorporated Well-Tec on September 11, 1989.  He further testified that, throughout its existence, Well-Tec's board of directors consisted of only the Debtor and himself. The board of directors did not maintain any corporate records or have annual meetings. (Transcript of June 6, 2007 Trial at pages 12-13[2], hereafter referred to as "Tr." followed by the appropriate page number.)   Although corporate records were not maintained, Mr. Wells testified that he filed several annual reports with the Virginia State Corporation Commission.  Two of these reports, which were introduced as exhibits 4 and 5, show that the Debtor served as the President of Well-Tec and that Mr. Wells served as its Vice President.  One of these annual reports was signed by Roger and the other by Roy.

Mr. Wells testified that he had incorporated Well-Tec for the purpose of

---

[2]  References to the appropriate page number of this Transcript refer to the page number in the Transcript as docketed in the Court's electronic filing system.

4

purchasing the Property, a parcel of land located adjacent to a 2.2 acre parcel of property which he and his son, Roger, owned as individuals.  (Tr. 15.)  The Property was purchased from Shelcy and Ella Jane Mullins for $31,000 and was conveyed to Well-Tec.  On direct examination, Roy testified that he could not recall whether the purchase price was borrowed or came from his personal funds (Tr. 15), and admitted in response to a leading question from Trustee's counsel that he could not recall why he chose to purchase the property in the name of Well-Tec instead of in his and the Debtor's name individually, saying, simply, "I can't."  (Tr. 16.)  Later, when questioned by his own counsel and the Court, he testified that either he paid the entire purchase price for the Property in cash or that the funds were obtained through a loan which he paid back.  (Tr. 25-26.)  He further testified that he believed the funds were most likely obtained from a conventional lending institution and that a deed of trust establishing such would be on file at the Wise County Courthouse.  (Tr. 36.)  He also testified that, at the time that the Property was purchased, a plat of the property was prepared.  That plat, which is a part of exhibit 3, indicated that it was prepared for Roy L. Wells, Jr. and Roger N. Wells.  (Tr. 16.)

Mr. Wells testified that the septic system for the adjacent 2.2 acre parcel is located on the Property.  (Tr. 22-23.)  In addition to the septic system, a small lagoon that was intended to retain wastewater is also located on the Property.  (Tr. 27.)  He further testified that an access route for the Property runs through the adjacent parcel owned by his son and himself individually (Tr. 16) and, after purchasing the Property, he and the Debtor used it as collateral to obtain a loan from Black Diamond Savings Bank.  Although the loan documents that were introduced as exhibits 6 and 7 indicate that the loan was for $135,000, Mr. Wells testified that he recalled the actual loan amount as being $35,000.  He could not recall how the proceeds of the

5

loan were used, but thought they were used as capital in other corporations which he and the

Debtor owned jointly.  He testified that no corporate resolution was adopted to authorize the use

of the Property as collateral or to obtain the loan, but that the note was signed by Well-Tec, the

Debtor, Roy Wells, Jr., and their wives.  The Deed of Trust was signed by Roy L. Wells, Jr. on

behalf of Well-Tec alone.  The full amount of the loan was paid off in November of 2000.  (Tr.

16-19.)  No evidence was offered that this loan had anything to do with the refinancing of any

purchase money financing associated with acquisition of the Property.

Mr. Wells testified that Well-Tec's corporate existence was terminated by the

Virginia State Corporation Commission for failure to file annual reports.  He further testified that

after the termination of Well-Tec's corporate existence, neither he nor the Debtor took any steps

to change or transfer title to the Property.  (Tr. 19.)

With regard to the issue of ownership, Roy Wells, Jr., on direct examination,

testified that no stock or stock certificates were issued, nor were any records kept that could

establish the respective ownership interests of himself and the Debtor.  Although Mr. Wells

could not recall who he intended to own Well-Tec at the time the corporation was formed, he

admitted that the "logical assumption" would be that he intended for himself and the Debtor to

each own one-half of Well-Tec because he and the Debtor had set up other corporations without

issuing stock and in those instances each one owned one-half of the corporation.  (Tr. 19-20.)

There was no testimony that any issuance of stock was ever authorized or agreed to by either the

father or the son.

With regard to corporations which Mr. Wells admits were co-owned with the

6

Debtor, he testified that a "very loose arrangement" existed between himself and the Debtor.

(Tr. 37.)  He further testified that when the companies did not make any profits, he often put his

money into them to maintain their operations.  (Tr. 38.)  He also stated that

> there weren't profits most often.  So what we did, when we had any
> profits, we paid off things that we were owing already, so there was
> never really any available money to be worried about how we got rid
> of it, you know, as far as disbursing it.

(Tr. 38.)

On cross-examination by his own counsel, Roy Wells testified that taxes are

current on the Property and that he had personally paid them ever since Well-Tec took title.  (Tr.

27.)  He further testified that he owned Well-Tec in its entirety.  He maintains that Well-Tec was

not jointly owned because the corporation had no operational aspects and its only asset was

bought and paid for by him.  Mr. Wells further explained that the Debtor was not paid by Well-

Tec, he had no "operational interest" in the corporation, nor did he contribute any funds to the

corporation. (Tr. 31-32.)  Roy Wells, Jr. later reiterated these statements when he was questioned

by the Court as to why he believes that he owns all of Well-Tec but owned other similarly run

corporations jointly with the Debtor.  (Tr. 40-41.)  When further questioned by the Court, Mr.

Wells was adamant that the Debtor did not contribute any funds to purchase the Property and

that no profits from their jointly owned corporations were used to purchase the Property. (Tr. 41-

42.)  He also testified that his principal source of income at the time the Property was purchased

was from his employment as a professor at Clinch Valley College.  His wife also had additional

income, which exceeded Mr. Wells' income, which she earned as an insurance agent for

Nationwide.  Mr. Wells further testified that he and his wife commingled their funds. (Tr. 48-

49.)             On redirect by counsel for the Trustee, Mr. Wells testified that the Debtor had

assisted in the construction of a small lagoon on the Property that was to be used for storing

wastewater from the companies that were owned jointly by himself and the Debtor.  He further

testified that although the lagoon was constructed, it was never used for its intended purpose.

On redirect, Roy Wells, Jr. also repudiated the statement made during his deposition that he and

the Debtor had "built" Well-Tec together and clarified that nothing had been really built at Well-

Tec other than the small lagoon which was never used.  (Tr. 32-33.)

   During its questioning, the Court inquired of Mr. Wells whether the closing

attorney who handled the 1990 purchase of the Property had been contacted about any records he

might have which could shed any light on the source of the funds for its purchase.  Mr. Wells

indicated that no effort to such effect had been attempted.  (Tr. 36-37.)  At the close of the

evidence, counsel for the Debtor requested an additional 5 days to attempt to obtain the file from

the successor office of the closing attorney, Mr. Kenneth Asbury, now apparently deceased, who

handled the conveyance of the Property from Shelcy and Ella Jane Mullins to Well-Tec.  Once

obtained, counsel for Roy Wells, Jr. proposed to submit all such records to the Court for

consideration in conjunction with the evidence presented at trial.  Counsel for the Trustee

objected and stated that if such records were obtained, she wanted the opportunity to depose Roy

Wells, Jr. regarding the information therein.  The Court overruled the request and noted that

while it would have been willing to receive such additional evidence if counsel were in

agreement, it would not do so over the objection of opposing counsel as the matter was set for

trial that day.  (Tr. 55-58.)

   In the Trustee's closing arguments, counsel argues that because Well-Tec's

8

corporate existence has been terminated and Roy Wells, Jr. and the Debtor are now trustees in liquidation pursuant to Va. Code Ann. § 13.1-751(A), the key issue before the Court is who are the shareholders of Well-Tec. Citing *Webber and Burkholder Corp. v. Rogers (In re Webber)*, 1988 U.S. Dist. LEXIS 18415 (W.D. Va. 1988), counsel argues that because no stock certificates were issued, the Court should look to "indicia of ownership" to determine who Well-Tec's shareholders are. Counsel argues that the indicia of ownership that the Court should consider in this case include the course of dealing between the Debtor and Roy Wells, Jr., that the Debtor had and exercised corporate authority over Well-Tec, that the assets and profits of the defendants' various corporations were intermingled, and that the Debtor and Roy Wells, Jr. acted as though the adjacent 2.2 acre parcel and the Property had common ownership. Counsel further argues that while none of these factors is sufficient alone to establish that the Debtor is a shareholder of Well-Tec, when considered together they lead to the inevitable conclusion that the Debtor owned one half of Well-Tec. To establish the "indicia of ownership" and in support of his argument, counsel cites Roy Wells, Jr.'s testimony which the Court has addressed above.

The Trustee further argues that the Debtor held an ownership interest in Well-Tec due to his capital contributions to the corporation. In support of this position, counsel argues that Roy Wells, Jr.'s testimony regarding the Debtor's position on the Board of Directors and assistance with developing the lagoon on the Property show that the Debtor provided capital to the corporation in the form of services rendered. Counsel also argues that the Debtor made financial contributions to Well-Tec because the funds of the corporations owned by Roger and Roy Wells were often intermingled and used to support the various businesses which they co-owned.

9

In his closing argument, counsel for Mr. Wells' primary argument is that the Trustee has failed to establish that the Debtor had an ownership interest in the corporation. He argues that the Trustee's case is based on circumstantial evidence and such evidence offered is insufficient for the Court to draw a reasonable inference that the Debtor owns an interest in Well-Tec. Counsel further argues that should the Court find that the Debtor has some interest in Well-Tec, the Trustee has failed to meet his burden of proof because at most the Trustee has established that the parties were involved in a joint venture or partnership. Based on the "loose arrangement" between the defendants, counsel goes on to argue that Well-Tec should be treated as a joint venture. Citing *Boyd, Payne, Gates & Farthing, P.C. v. Payne, Gates, Farthing & Radd, P.C.*, 244 Va. 418, 422 S.E.2d 784 (1992) and *Deeds v. Gilmer*, 162 Va. 157, 174 S.E. 37 (1934), counsel argues that in the instance of a de jure corporation that has not issued stock and has not been operated as a corporation, ownership should be determined according to the parties' respective capital contributions to the corporation as it would in a joint venture. In the instant case, counsel argues that the Trustee has failed to prove what, if any, capital contributions the Debtor made to Well-Tec. Thus if the principles of the law of joint ventures are applied to determine ownership, the Debtor would not be entitled to any distribution of Well-Tec's assets upon its dissolution because the Debtor did not make a capital contribution that would entitle him to a distribution of capital assets. As such, counsel argues that the Trustee has not met his burden of establishing that the Debtor and thus the estate are entitled to a portion of Well-Tec's assets.

**FINDINGS OF FACT AND UNPROVEN CONTENTIONS**

10

The Court was favorably impressed with the demeanor of Mr. Wells and believes that he was attempting to testify about the history of the Well-Tec corporation and the Property as he believed it to be. That is not the same thing, however, as finding that the actual facts were exactly as he testified. No doubt his memory is colored by his general perception of the extensive joint business history which he shared with his son and the knowledge of the ultimate results of that history. Even if Roy Wells did not pay absolutely 100% of the purchase price of the Well-Tec property from his personal funds, the Court doesn't doubt that he did bear substantially all of the financial burden associated with such purchase.

One circumstance casting some doubt on the correctness of the Trustee's principal, albeit perhaps implicit, contention that Roy and Roger intended and understood at the time of incorporation and during its corporate existence that Well-Tec was to be a jointly owned enterprise, is worthy of note. It is clear that in just the prior year to the 1990 Well-Tec transaction Roy and Roger had purchased the smaller adjoining parcel from the same sellers and that such parcel was conveyed to them as individuals. As far as "logical assumptions" go, it would have been logical that the purchase of the adjacent parcel the very next year would have been handled in the same way, but it was not. Mr. Wells remembered that he had incorporated Well-Tec for the specific purpose of acquiring the 10.5 acre tract, but could not remember the reason for having done so. If he cannot recall, the rest of us are left to speculate as to the reason, but certainly one reasonable scenario is that he was providing the purchase money, either directly from his and his wife's joint funds or by putting his credit at risk, to make the transaction happen, he wasn't sure how it might work out or to what extent, if any, Roger would participate in paying the acquisition cost, and he wanted to keep his options open. The Court

11

doesn't make any finding of fact that such possible scenario actually occurred, but the critical point is that there was some now unknown reason, or perhaps more than one reason, for not titling the 1990 purchase in the same manner as the 1989 transaction.  The Trustee's evidence, perhaps unavoidably from his perspective, doesn't permit the Court to make a reliable finding as to what that original intent was.

While some of the testimony of Roy Wells was arguably internally inconsistent, the principal area of dispute between the parties seems to be what weight the Court should give to, and what inferences it ought to draw from, the history of dealing between Roger and Roy Wells associated with co-ownership of corporations and businesses and the absence of observation of normal corporate formalities.  The Court does make those findings of fact established by the testimony and other evidence offered at trial and discussed above which are not in dispute or otherwise the subject of conflicting evidence.

What seems more important in the decision of this proceeding, however, is not what has been proven, but what has not been proved.  The evidence presented does not justify any finding, for reasons discussed more particularly hereafter, that the Debtor ever furnished any money or services as consideration for the issuance of any stock to him in Well-Tec or to create any other ownership interest in his favor in such corporation.  Neither is it sufficient to establish any partnership or joint venture agreement between Roy and Roger Wells with respect to the ownership of the Property, or that Roger exercised any actual authority whatsoever over Well-Tec Corporation.  The facts that he was named a director of such corporation in its articles of incorporation and as its president in other documents filed with the State Corporation Commission do not establish any actual existence or exercise of any authority over the Property,

12

Well-Tec's only indicated asset or business.


## CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of

28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the

District Court on July 24, 1984.  Matters concerning the liquidation of the assets of the estate are

"core" bankruptcy matters pursuant to 28 U.S.C. § 157(b)(2)(O).  As the petition in this case was

filed in 2004, this matter is controlled by the law in effect prior to the adoption of the

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA).

As counsel for the Trustee has correctly noted, the Trustee has the burden of

proof on the issues in dispute in this adversary proceeding.  *See Peterson v. Lewis (In re*

*Jenkins)*, 347 B.R. 77 (Bankr. N.D. Ill. 2006) (stating that a trustee bears the burden of proof

under 11 U.S.C. § 363(h)).  The Bankruptcy Code expressly places the burden of proof upon

"the entity asserting an interest in property . . .on the issue of the validity, priority, or extent of

such interest."  11 U.S.C. § 363(o)(2) [now (p)(2) since the passage of BAPCPA].  Accordingly,

"the burden of proof rests on the party seeking turnover."  Russell, *Bankruptcy Evidence*

*Manual*, § 301.64 at p. 935 (2007 ed.), citing *Maggio v. Zeitz*, 333 U.S. 56, 68 S.Ct. 401 (1948)

and lower court decisions.  This burden is by a simple preponderance of the evidence.  With this

in mind, the Court will now turn to counsels' arguments.

As the Trustee has argued, the *Webber* opinion recognized that "indicia of

ownership" should be considered when determining corporate ownership.  *In re Webber*, 1988

U.S. Dist. LEXIS 18415 at *1.  In that case, the Court addressed whether there was sufficient

indicia of ownership to establish that the appellant owned an interest in a corporation that had

been dissolved.  After examining the record, the Court, in an opinion by District Judge Kiser,

stated that

> The only significant evidence of ownership proffered by Mrs.
> Webber was her payment of consideration. This was allegedly made
> in the form of past services rendered to either Burkholder
> Corporation and/or to her husband's accounting business. Although
> services may properly serve as consideration for the purchase of
> stock, they must be rendered to the corporation for the purpose of
> acquiring the stock; i.e., the services must constitute bargained-for
> consideration.  This has not been proven by the Appellants.

*Id.* at *2-3.  Based upon this finding, the District Court held that there was not sufficient

evidence to establish that the appellant owned an interest in the corporation.

In the present case, counsel for the Trustee has offered several indicia of

ownership which she argues together establish that the Debtor has an interest in Well-Tec.  The

Court, however, concludes the evidence offered by the Trustee is insufficient to establish an

ownership interest.  The evidence offered by the Trustee consists of 8 exhibits and the testimony

of the Trustee's sole witness, the co-defendant Roy Wells, Jr.  While some of that evidence

raises some suspicion that the Debtor owns an interest in Well-Tec, the inferences from that

evidence which the Trustee urges this Court to draw were expressly contradicted by the

testimony of the Trustee's own witness.  Furthermore, Mr. Wells was adamant that the Debtor

had not contributed funds to purchase the Property and that he owned all of Well-Tec.  Despite

this testimony, the Trustee argues that the Debtor made a capital contribution to Well-Tec by

helping to "build the corporation" and constructing the lagoon that is located on the Property.

While it may be true that the Debtor did provide some rather limited services with respect to the

Property owned by the corporation, there is no evidence that such services were offered as consideration for an issuance of stock or other ownership interest in Well-Tec.  Accordingly, in the words of the *Webber* decision, the Debtor's services did not "constitute bargained-for consideration" and were not a capital contribution.  The Trustee has also argued that the fact that Roger and Roy operated other companies, which did not issue stock or observe corporate formalities but are admittedly jointly owned, indicates that Well-Tec is just another corporation in a line of jointly owned corporations incorporated by Mr. Wells which did not issue stock or observe corporate formalities.  However, the Court finds that this circumstance could cut either in favor of or against the Trustee's argument.  It is true that the other corporations did not issue stock either and were owned jointly, but the father's uncontroverted testimony was that Well-Tec was unique in that it was just a shell corporation used to hold the Property that he had paid for entirely.   No doubt the existence of other corporations which were jointly owned raises a suspicion that Well-Tec was also, but such a suspicion only amounts to speculation if the circumstantial evidence serving as its foundation is also equally susceptible to other inferences. For example, the fact that the father readily admits that the other corporations were jointly owned may well lend credibility to his assertion that his son, the Debtor, provided nothing toward the purchase of the land which is the subject of this adversary proceeding.  While the Court is well aware that one's memory of events is affected by such person's current beliefs and interests[3], even if the father's testimony is discounted, the Court is still confronted with an absence of unambiguous evidence which proves the Trustee's contentions.  The Court cannot overlook the circumstance that we are dealing with a father and son relationship.  Accordingly,

---

[3] Mr. Wells himself acknowledged in his testimony that recollections can be "spurious". (Tr. 44.)

evidence which might be quite probative if the parties had been acting at arm's length has little

weight due to this family relationship.  It would not at all be contrary to normal human

experience for a son to allow himself to be named as an officer and director of his father's

corporation even if he had no economic interest or promise of same in it.  Similarly, the location

of the septic system on the subject property for the benefit of the adjoining jointly owned parcel

could be just as susceptible, if not more so, to an inference, considering the family relationship,

of an intent to create a servitude upon the Well-Tec property for the benefit of the adjoining

parcel as it is to one supporting a finding that Well-Tec was jointly owned.  It only recognizes

ordinary human nature to acknowledge that a father will do things, even contrary to his own

economic interest, for the benefit of a child, even a grown one, which he would not even

consider for a non-related business associate.  Furthermore, the pledging of Well-Tec property

for a loan which the father, the son, and their spouses signed for would certainly support a

reasonable inference that the parties were on good terms with each other, but it does little, if any,

more.  To draw the inference that it establishes or tends to prove common ownership of Well-

Tec is to go over the line which separates reasonable inferences from unjustified speculation.

That a father might pledge his individual property as collateral for a loan needed by business

ventures for which both he and his son are jointly responsible is not strange, contrary to ordinary

human nature or implausible.

       The other indicia of ownership which the Trustee argues establish ownership are

plagued with similar problems in that they easily allow for more than one reasonable

interpretation or are contradicted by other evidence.  For example, just as the location of the

septic tank field on the Well-Tec property was for the benefit of the adjoining smaller parcel

owned individually by Roy and Roger, rather than any benefit to Well-Tec, the construction of

the lagoon on the Property was not to provide any benefit to its owner(s), but rather for the

benefit of certain businesses indicated to have been owned jointly by Roy and Roger or

corporations which they owned.  Accordingly, the Court must agree with Mr. Wells that the

evidence does not establish that Roger did anything to "build" Well-Tec or increase the value of

its asset.  Similarly, the fact that the survey plat for the Well-Tec property indicated on its face

that it was prepared for Roy and Roger Wells could just as likely as not been titled that way by

the surveyor simply because the adjoining parcel was already owned by them in their direct

personal names and he assumed that the same would be true for the new parcel.  While the

Trustee also asserts that some of the purchase price for the Property must have been paid from

revenues of businesses owned jointly by Roger and Roy Wells, the inescapable fact is that he has

not been able to introduce proof of even one specific instance where such actually occurred.

There has also been no showing by counsel for the Trustee that Roger Wells is a "shareholder"

as that term is defined under the Virginia Code.  Shareholder means "the person in whose name

shares are registered in the records of the corporation, the beneficial owner of shares to the

extent of the rights granted by a nominee certificate on file with a corporation, or the beneficial

owner of shares held in a voting trust."  Va Code. Ann. § 13.1-603.  The statutory duty of Roy

and Roger Wells as trustees in liquidation of Well-Tec under the Virginia statute run in favor of

creditors and "shareholders".  Va Code Ann. § 13.1-752(A).  It is the Trustee's burden to prove

that Roger Wells was a stockholder in or was otherwise entitled to some other ownership interest

in Well-Tec, not Roy's obligation to prove that contrary.  Apparently neither party went to the

trouble of attempting to secure the file of the closing attorney who handled the 1990 purchase of

17

the Property, if indeed such file continues to exist, or to request or, if need be, subpoena the

records of the bank which made the 1995 loan secured by the Property to find out whether such

loan had anything to do with a refinancing of any original purchase money financing.  The Court

is left to wonder whether either party checked the records of the Circuit Court's Clerk's Office to

see if there was any financing transaction placed of record in connection with the 1990 purchase

of the 10.5 acre parcel as Mr. Wells seemed to think probably was the case.  The end result is

that the Trustee simply has failed to carry his burden of proof, relying on suspicion and

speculation to carry the day, a reliance which the Court determines to have been misguided.

While smoke can certainly be evidence of fire, sometimes it only is evidence of smoke.


## CONCLUSION

For the reasons stated above, the Court by its separate order will enter judgment

in favor of the co-defendant, Roy Wells, Jr., with regard to the Trustee's contention that the

Debtor was, and therefore the bankruptcy estate is, an equal owner with him of the Property,

Well-Tec's only asset.  The Trustee alternatively sought turnover generally of  "property of the

estate . . . " Complaint ¶ 17.  The parties have not offered any argument, however, as to whether

the evidence, if insufficient to prove any pro rata fee simple ownership by the bankruptcy estate

in the Well-Tec property, is nevertheless adequate to establish an easement in favor of the

adjoining jointly owned parcel, and a servitude upon the Well-Tec property, for the continued

existence, use, maintenance and repair of the septic tank system located upon the Property and

which serves such jointly owned parcel.  Accordingly, the Court will not undertake to rule at this

time upon that issue but will allow the parties fifteen days from this date to file their initial briefs

thereon and ten days thereafter to file any desired response to the other's submission, unless the

parties sooner advise the Court that they have reached a mutually satisfactory resolution of such

issue.

This 30th day of July, 2007.

_____
UNITED STATES BANKRUPTCY JUDGE

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

IN RE:                              )
                                   )    **CHAPTER 7**
**ROGER N. WELLS**                  )
                                   )
          **Debtor.**          )    **CASE NO.  04-75100**
_____

**CHARLIE R. JESSEE, Trustee**      )
                                   )
          **Plaintiff,**       )
                                   )
**v.**                              )
                                   )    **Adversary Proceeding No. 06-07094**
**ROY WELLS, JR.**                  )
**and**                             )
**ROGER N. WELLS**                  )
                                   )
          **Defendants.**      )
_____

## ORDER

For the reasons stated in the Court's contemporaneous Memorandum Opinion, it is

## ORDERED

that judgment be entered in favor of the co-defendant, Roy Wells, Jr., with regard to the

Trustee's contention that the Debtor was, and therefore the bankruptcy estate is, an equal owner

with him in the property of Well-Tec Corporation.  As the parties have not offered any argument,

however, as to whether the evidence, if insufficient to prove any pro rata fee simple ownership

by the bankruptcy estate in the Well-Tec property, is nevertheless adequate to establish an

easement in favor of the adjoining jointly owned parcel, and a servitude upon the Well-Tec

property, for the continued existence, use, maintenance and repair of the septic tank system

located upon the Property and which serves such jointly owned parcel, the Court will not undertake to rule at this time upon that issue but will allow the parties fifteen days from this date to file their initial briefs thereon and ten days thereafter to file any desired response to the other's submission, unless the parties sooner advise the Court that they have reached a mutually satisfactory resolution of such issue.

The Clerk is directed to send copies of this Order and accompanying Memorandum Opinion to the Debtor; the Trustee, Charlie R. Jessee; counsel for the Trustee, Lori D. Thompson, Esquire and William E. Callahan, Jr., Esquire; counsel for Roy Wells, Jr., John M. Lamie, Esquire; and the Office of the United States Trustee for the Western District of Virginia.

ENTER this 30th day of July, 2007.

_William F. Stone, Jr._
UNITED STATES BANKRUPTCY JUDGE